NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>*Pacific*</u> <u>*Reporter*</u>. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

|  |  |
|---|---|
| KENNETH ARNOLD WAHL,<br><br>    Appellant,<br><br>    v.<br><br>STATE OF ALASKA,<br><br>    Appellee. | Court of Appeals No. A-11825<br>Trial Court No. 3AN-09-8618 CR<br><br><br>O P I N I O N<br><br><br>No. 2561 — August 4, 2017 |

Appeal from the Superior Court, Third Judicial District, Anchorage, Jack W. Smith, Judge.

Appearances: Sharon Barr, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant. Eric A. Ringsmuth, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Craig W. Richards, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Suddock, Superior Court Judge.[*]

Judge MANNHEIMER.

---

[*] Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

In the spring of 2009, Kenneth Arnold Wahl approached an Anchorage homeowner, Colette Fry, and asked her if she needed help with her landscaping. Fry hired Wahl on the spot to help her with yard work. Soon after she met Wahl, Fry realized that Wahl was homeless, and she offered to let him stay in a camper on her property, free of charge.

About six weeks later, Fry's next-door neighbor, Elisa Orcutt, was found murdered in her home. Wahl was quickly identified as a suspect, and he was ultimately tried and convicted for this murder.

Wahl now appeals his conviction on two grounds. He claims that some of the State's evidence (a pair of blood-stained boots) was obtained illegally, and he also claims that his trial attorney should have been allowed to introduce the grand jury testimony of a witness whose presence could not be procured for trial. For the reasons explained in this opinion, we conclude that there is no merit to either of Wahl's claims, and we therefore affirm his conviction.

*The police discovery and seizure of a pair of blood-stained boots*

Part of the physical evidence introduced against Wahl at his trial was a pair of blood-stained boots that were discovered beneath the camper where Wahl was staying (the camper located on Colette Fry's property).

The camper was situated on Fry's lawn, but it was raised off the ground, held up by jacks and wooden pallets. After Fry gave the police permission to search her property for evidence of her neighbor's murder, the police looked underneath the camper and discovered the boots.

Wahl's attorney filed a pre-trial motion seeking suppression of these boots on the ground that the police violated Wahl's Fourth Amendment rights when they

looked underneath the camper. But following an evidentiary hearing, the superior court found that Colette Fry consented to this search. The court further found that Fry had the authority to permit this search, even after she gave Wahl permission to stay in the camper.

A warrantless search does not violate the Fourth Amendment if the police have obtained the consent of a person having actual or apparent authority over the property. [1]

The record clearly supports the superior court's finding that Fry consented to the search. Both Fry and police detective David Cordie testified that Fry authorized the police to search her property, including the camper, for evidence relating to the murder. The record also supports the superior court's finding that Fry had sufficient authority over the camper to consent to the search. Fry testified that even after she gave Wahl permission to live on her property, she continued to store her belongings both inside the camper and in the space beneath it. (In particular, Fry stored fishing and camping gear in the camper itself, and she stored seat cushions, buckets, hoses, and jack fluid underneath the camper.) Fry also testified that she did not need to ask Wahl's permission to retrieve these items.

Based on this record, we affirm the superior court's ruling that the police lawfully searched underneath the camper and discovered the boots.

---

[1] *See Hilbish v. State*, 891 P.2d 841, 848 (Alaska App. 1995): "Consent to search given by a person with authority to consent has long been recognized as one of the exceptions that can justify a warrantless search. A person may consent to a search if that person has joint access to or control of the place to be searched. Actual authority to consent is not required, so long as the person has the apparent authority to consent." (Citations omitted.)

*The trial judge's ruling that the defense could not introduce Lewis "Buddy" Hardwick's grand jury testimony at Wahl's trial*

Wahl's defense to the murder charge was that someone else had killed Elisa Orcutt — and that the murderer was possibly Lewis "Buddy" Hardwick, an acquaintance of Wahl's.

Beginning with her opening statement, Wahl's attorney told the jurors that Hardwick had been in many of the same locations as Wahl around the time of the murder — and that the police had failed to adequately investigate whether Hardwick might have committed the murder:

> *Defense Attorney*: The State cannot go back and fix their investigation. It's too late for that. They chose which leads to follow and which leads to abandon, but they chose wrong. Ladies and gentlemen, this is the case where the State got the wrong guy.

The defense attorney resumed this theme in her summation to the jury. She listed various reasons why Hardwick should have been viewed as a "person of interest", and she asserted that the police had negligently failed to investigate Hardwick. Then, according to the defense attorney, Hardwick "mysteriously" left Alaska.

In the context of this defense, Wahl's attorney asked the trial judge to let her introduce Hardwick's grand jury testimony.

In July 2009 (*i.e.*, the month following the murder), Hardwick was called as a witness before the grand jury that indicted Wahl. In his testimony, Hardwick described his year-long acquaintance with Wahl, as well as their shared work history. More importantly, Hardwick testified that Wahl let him sleep in the camper on two nights in June 2009: Saturday the 20th and Monday the 22nd. Elisa Orcutt's body was discovered in her basement on Tuesday the 23rd.

Hardwick testified that on one of the evenings that he was staying with Wahl in the camper (most likely Monday evening, June 22nd), Wahl asked for Hardwick's assistance in stealing property from a house in the neighborhood. Hardwick told Wahl that he would not help do this.

When Hardwick woke up the next morning, there was property in the camper that had not been there before: a stereo boom-box, a yellow toolbox, and numerous bottles of perfume. In addition, Wahl asked Hardwick to pawn a necklace and a ring for him. Wahl claimed that he could not pawn these items himself because he did not have any identification.

Finally, Hardwick identified Wahl as the owner of the boots that were discovered underneath the camper.

Wahl was indicted in July 2009, but his trial was not held until four years later, in early June 2013. On May 28th, shortly before Wahl's trial began, Wahl's defense attorney announced that she intended to identify Hardwick as someone who could potentially have committed the murder.

At that time, the prosecutor apparently intended to call Hardwick as a witness at Wahl's trial. But one week later, after several days of trial, the prosecutor announced that Hardwick would not testify at Wahl's trial because "nobody can find him right now". The prosecutor explained that the police had conducted an extensive but unsuccessful search for Hardwick, and they believed that he was no longer in Alaska. (This belief was later corroborated by police records showing that Hardwick received a traffic ticket in Florida on May 8th — three weeks before Wahl's trial began.)

Although Hardwick's grand jury testimony was primarily inculpatory of Wahl, Wahl's attorney asked the trial judge for permission to introduce Hardwick's grand jury testimony under Alaska Evidence Rule 804(b). Evidence Rule 804(b) authorizes the admission of certain classes of hearsay statements if the proponent of the

evidence can establish that the person who made these statements is unavailable to testify (*i.e.*, "unavailable" as that term is defined in subsection (a) of Evidence Rule 804).

More specifically, the defense attorney contended that Hardwick's grand jury testimony was admissible under Rule 804(b)(1), which authorizes the admission of a witness's prior testimony "if the party against whom the testimony is now offered ... had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination."

Alternatively, the defense attorney argued that Hardwick's grand jury testimony was admissible under Rule 804(b)(5), the "residual clause" of Evidence Rule 804(b). Under this provision, hearsay is admissible if the proponent of the evidence establishes:

- that the person who made the statements is unavailable;
- that the proposed hearsay evidence has circumstantial guarantees of trustworthiness equivalent to the circumstantial guarantees of trustworthiness codified in the other provisions of Rule 804(b) (*i.e.*, subsections (1) through (4) of the rule);
- that the proposed hearsay evidence is material and is "more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts"; and
- that "the general purposes of [the evidence rules] and the interests of justice will best be served by admission of the statement into evidence."

Following a hearing on these issues, the superior court found that the defense attorney had failed to pursue reasonable efforts to locate Hardwick and procure his testimony. Thus, the court ruled, the defense attorney had failed to establish that Hardwick was "unavailable" as defined in Rule 804(a)(5).

In addition, the superior court concluded that even if Hardwick was unavailable as defined in Rule 804(a)(5), the proposed hearsay evidence failed to satisfy the requirements of either Rule 804(b)(1) (the "former testimony" provision of the rule) or Rule 804(b)(5) (the "residual" provision of the rule).

On appeal, Wahl challenges all of these rulings. We agree with the superior court that Wahl failed to establish the foundational requirements for admission of the proposed hearsay evidence under either Rule 804(b)(1) or Rule 804(b)(5). We therefore need not decide whether Wahl demonstrated reasonable efforts to locate Hardwick and procure his testimony.

*The grand jury testimony was not admissible under Rule 804(b)(1)*

There are no Alaska cases that discuss how the hearsay exception codified in Evidence Rule 804(b)(1) applies to grand jury testimony. However, the Ninth Circuit addressed this issue in *United States v. McFall*, 558 F.3d 951, 961-63 (9th Cir. 2009), where the court construed the federal counterpart to Alaska Evidence Rule 804(b)(1).

The Ninth Circuit noted that the "similar motive" requirement of Federal Evidence Rule 804(b)(1) is "a fact-intensive" requirement that hinges on "the particular circumstances of the case." [2]

In *McFall*, the question was whether the defense was entitled to introduce the grand jury testimony of a man named Sawyer. According to the government's theory of the case, Sawyer and McFall had jointly conspired to commit extortion. [3] In Sawyer's lengthy grand jury testimony, he repeatedly denied this charge — and his description of

---

[2]  *McFall*, 558 F.3d at 961. See also Justice Blackman's concurring opinion in *United States v. Salerno*, 505 U.S. 317, 325-26; 112 S.Ct. 2503, 2509; 120 L.Ed.2d 255 (1992).

[3]  *Ibid.*

events largely corroborated McFall's account. [4]   The Ninth Circuit concluded that, under these circumstances, the government's motive to cross-examine Sawyer during his grand jury testimony was similar to the motive that the government would have had if Sawyer had been available as a witness at McFall's trial and had given the same testimony. [5]   Thus, the Ninth Circuit ruled, Sawyer's grand jury testimony was admissible under Federal Evidence Rule 804(b)(1).

But in Wahl's case, the government did not believe that Hardwick was Wahl's accomplice when the government brought Hardwick to testify to the grand jury. Rather, the government viewed Hardwick as a witness who had important knowledge of Wahl's actions and statements in the days surrounding the murder. And as we have already noted, Hardwick's grand jury testimony was largely inculpatory of Wahl. Although Hardwick did not assert that Wahl had committed the murder, Hardwick's testimony provided significant circumstantial evidence of Wahl's guilt.

Nothing in the grand jury record suggests that the prosecuting attorney had reason to believe that someone might later claim that it was Hardwick, not Wahl, who committed the murder, and that it was necessary to examine Hardwick on this issue.

Under these circumstances, the record amply supports the superior court's conclusion that, if Hardwick had been called as a witness at Wahl's trial, and if Wahl's attorney had examined Hardwick in a manner suggesting that Hardwick, and not Wahl, had committed the murder, the trial prosecutor would have had a significantly different motive to examine Hardwick.

We therefore agree with the superior court that Hardwick's grand jury testimony was not admissible under Alaska Evidence Rule 804(b)(1).

---

[4]   *Ibid.*

[5]   *Id*. at 963.

*The grand jury testimony was not admissible under Rule 804(b)(5)*

This leaves Wahl's alternative argument that Hardwick's grand jury testimony should have been admitted under Evidence Rule 804(b)(5), the residual clause of the rule.

As we have explained, Rule 804(b)(5) requires the proponent of the hearsay evidence to establish that the proposed hearsay has circumstantial guarantees of trustworthiness that are equivalent to the circumstantial guarantees of trustworthiness codified in the other provisions of Rule 804(b).

Here, there is another provision of Evidence Rule 804(b) — subsection (b)(1) — that directly addresses the admissibility of a person's prior testimony. And as we have just discussed, when a party wishes to introduce evidence of prior testimony under Rule 804(b)(1), the party offering the evidence must prove that the other party — *i.e.*, "the party against whom the testimony is now offered" — had a similar motive to develop the person's testimony at the earlier time.

We have already concluded that Wahl failed to satisfy this requirement of Rule 804(b)(1). If Hardwick had testified at Wahl's trial, and if Wahl's attorney had suggested that Hardwick rather than Wahl had committed the murder, the government would have had a significantly different motive to develop Hardwick's testimony.

Thus, when Wahl argues that Hardwick's grand jury testimony should have been admitted under the residual clause of Rule 804(b)(5), he is essentially arguing that even when the opposing party did *not* have a similar motive to develop the person's testimony on the earlier occasion, there are nevertheless situations where the former testimony evidence has circumstantial guarantees of trustworthiness that are equivalent to the "similar motive" requirement.

The United States Supreme Court rejected almost this same argument in *United States v. Salerno*, 505 U.S. 317, 112 S.Ct. 2503, 120 L.Ed.2d 255 (1992). In *Salerno*, the Supreme Court held that the "similar motive" requirement was an essential component of Federal Evidence Rule 804(b)(1), and the Court rejected arguments that this requirement could be relaxed in the interest of justice. *Id.*, 505 U.S. at 321-24, 112 S.Ct. at 2507-09.

What *Salerno* teaches is that, in the absence of a "similar motive" to develop the person's testimony on the former occasion — that is, when the testimony is now being offered in a different context or for a different purpose — there is a significant danger that the former testimony will be incomplete, or that it will not be focused on the issues that are actually being disputed in the current litigation. Thus, there is an unacceptable risk that arguments and inferences based on the former testimony will be speculative or misleading.

This means that when proof of "similar motive" is lacking, evidence of a person's former testimony will almost inevitably fail to satisfy the "equivalent guarantees of trustworthiness" requirement of Evidence Rule 804(b)(5). As this Court explained in *Ryan v. State*, 899 P.2d 1371, 1375 (Alaska App. 1995), when hearsay evidence is offered under Evidence Rule 804(b)(5), the proponent of the evidence must establish that "the totality of circumstances that surround the making of the statement ... render the declarant particularly worthy of belief" and render the proposed hearsay evidence "so trustworthy that adversarial testing would add little to its reliability."

There might be extraordinary circumstances where, even though the proponent of former testimony evidence failed to satisfy the "similar motive" requirement of Rule 804(b)(1), the proposed former testimony evidence would nevertheless have guarantees of trustworthiness equal to the trustworthiness guaranteed

by the "similar motive" requirement. But Wahl's case presents no such extraordinary circumstances.

Accordingly, we agree with the superior court that Hardwick's grand jury testimony was not admissible under Evidence Rule 804(b)(5).

*Conclusion*

The judgement of the superior court is AFFIRMED.